IN THE MATTER OF THE REAL AND PERSONAL PROPERTY
OF ANNE MARIE SOMOZA, A/K/A MARY A. SOMOZA,
NOW DECEASED.

IN THE MATTER OF THE ESTATE OF ANNE MARIE
SOMOZA, DECEASED.

Superior Court of New Jersey
Chancery Division Mercer County*

Decided July 27, 1982.

*Consolidated with Ocean County Surrogate Court No. 66687.

*Robert P. Krenkowitz,* Deputy Attorney General, for plaintiff State of New Jersey (*Irwin I. Kimmelman,* Attorney General, attorney).

*Peter R. Strohm,* for defendant Anna Laufer (*Rothstein, Mandell & Strohm,* attorneys).

DREIER, J.S.C.

Anne Marie Somoza, a resident of Ocean County, died intestate on February 26, 1982. Funeral expenses were borne by Anna and Isser Laufer, long-time neighbors and friends of the deceased. In accordance with *N.J.S.A.* 2A:37–12, the Laufers, through their attorney, gave prompt notice to the Attorney General that the Somoza estate, which consisted of real and personal property worth approximately $115,000, might be subject to escheat. The State's preliminary investigation revealed no information identifying any next-of-kin, and so, on March 10, 1982, escheat proceedings were begun in the Chancery Division, Mercer County. The following day, upon the State's application,

this court signed an order appointing a conservator to preserve and protect the intestate estate.[1]

Telephone notice of the State's intention to commence an escheat action in Chancery was given to the Laufers' attorney on March 4, 1982; written notice of the appointment of a conservator was given to the Laufers personally on March 17, 1982, and public notice of the State's action was twice published—on March 22 and March 29, 1982—in a newspaper of general circulation in Ocean County.[2]  Nevertheless, on April 7, 1982 Anna Laufer applied to the Surrogate of Ocean County for Creditor's Letters of Administration, alleging a claim against the Somoza estate in the amount of about $8,000 for monies advanced and services rendered to Mrs. Somoza.

The State then moved to remove and consolidate the proceedings in the Ocean County Surrogate's Court with the escheat action already pending in the Chancery Division in Mercer

---

[1]The statutory authority for the escheat procedure is set out in the Escheat Act, *N.J.S.A.* 2A:37–1 *et seq.;* see, also, *R.* 4:68.  The current practice of appointing a conservator to marshal and secure the intestate's assets is a development from the procedure whereby the Attorney General could petition for the appointment of a receiver for escheatable real property.  *McCarter (Attorney General)* v. *Clavin,* 72 *N.J.Eq.* 642, 645 (Ch.1907).  The conservator is a supervised fiduciary, subject to the court's continuing review and direction as to the handling of the property and disbursements of assets.  As declared in *In re Volkmar,* 183 *N.J.Super.* 512 (Ch.Div.1982):

> The need for a court-appointed conservator is two-fold: (1) to provide an individual whose primary duty is to protect the assets for the next lawful takers, be it the State should the escheat proceed, or the heirs-at-law if any are located, and (2) to avoid any question of conflict of interest between the Attorney General and future private intestate beneficiaries, should the State's escheat proceeding not succeed.  [at 513, n. 1]

[2]*N.J.S.A.* 2A:37–18 requires that a notice to persons claiming an interest in the intestate's estate, the form and contents of which notice are described in *N.J.S.A.* 2A:37–19, be posted in the state capitol and be published "once a week for two successive weeks in a newspaper of general circulation in Mercer County or in such other county as the court shall designate."  Pursuant to the practice established by this court in escheat/conservatorship proceedings, the State is directed to publish such notice in a newspaper of general circulation in the county of the intestate decedent's residence.

County. The State also filed a caveat against administration, the effect of which was to prohibit the surrogate from taking any action in the matter. *R.* 4:84–1(d); *In re Aich Estate,* 164 *N.J.Super.* 179, 182 (Ch.Div.1978). Mrs. Laufer countered by filing a complaint in the Law Division, Probate Part, in Ocean County, requesting that letters of administration be granted to her or to such other person as the Ocean County Surrogate may designate. On April 30, 1982 this court granted the State's motion and entered an order consolidating all administration proceedings into the escheat action. Now the State has moved to dismiss the administration action, arguing that such action is unnecessarily duplicative in light of the ongoing escheat/conservatorship proceeding. The State further asserts that only the Chancery Division has the jurisdiction to provide full relief to all parties.

The issue to be resolved, therefore, is: When may the State, acting under the comprehensive mandates and guidelines governing escheats as set out in *N.J.S.A.* 2A:37–1 *et seq.* and in *R.* 4:68, preempt the exercise of the surrogate's jurisdiction over the administration of intestate estates.[3] This court holds that the existence of a pending, properly instituted escheat proceeding overrides any subsequent attempt by the surrogate to administer the estate when all aspects of such administration can adequately be handled only within the context of the escheat proceeding.

Pursuant to *N.J.S.A.* 2A:37–12, 3A:6–4 and *R.* 4:80–1(a), the Chancery Division and the county surrogate have concurrent jurisdiction in administration proceedings. *See, also, In re Aich Estate, supra,* 164 *N.J.Super.* at 183. The surrogate's jurisdiction, however, is limited to matters which are not in doubt or dispute. *R.* 4:84–1(d). In such instances, which may be signaled by the filing of a caveat, the surrogate's hand is stayed, and any

---

[3]The surrogate's authority is derived from *N.J.S.A.* 3A:6–3 and 4. See, also, *N.J.S.A.* 3B:10–2; *R.* 4:80, *R.* 4:84.

dispute as to the administration of the intestate estate is properly resolved before the Law Division, Probate Part (formerly the County Court), in the county of the decedent's residence. *In re Lemken*, 124 *N.J.Super.* 481, 485 (Law Div.1973).

The dispute in the case at bar, however, cannot be resolved in the Law Division, since one form of relief requested in the consolidated action is the entry of a judgment of escheat. Only the Chancery Division has jurisdiction to enter such a judgment. *State v. Standard Oil Co.*, 5 *N.J.* 281, 289 (1950), aff'd 341 *U.S.* 428, 71 *S.Ct.* 822, 95 *L.Ed.* 1078 (1951). The Chancery Division can, as well, adjudicate the disputable, unliquidated personal services claim of Anna Laufer.[4] Indeed, *Mahr v. State,* 12 *N.J.Super.* 253, 259–260 (Ch.Div.1951), decided under the predecessor to our present Escheat Act, states that a claimant against an intestate estate might proceed most effectively by prosecuting the claim within the context of an escheat action. And, under the present practice in escheat/conservatorship proceedings, the State is under court order in each instance to publish notice of the action in a local newspaper. *See* footnote 2, *supra.* The wording of such notice specifically directs all creditors of the estate to present their claims to the court-appointed conservator. Thus, the concern expressed in *In re Reich Estate,* 149 *N.J.Super.* 475, 477 (App.Div.1977), certif. den., 75 *N.J.* 520 (1977), that creditors would receive greater protection (under the notice requirements of *R.* 4:87–3(b)) if the estate were administered locally than if it were made subject of an escheat action, is assuaged.

In *In re Reich Estate, supra,* the court rejected the State's argument that an estate subject to escheat should not be administered, holding that both methods of dealing with intestate estates could proceed simultaneously. The court found no

---

[4]Except in insolvency proceedings, a probate court has no jurisdiction to decide such claims. *Vreeland v. Schoonmaker,* 16 *N.J.Eq.* 512, 527 (Prerog. 1863); *Partridge v. Partridge,* 46 *N.J.Eq.* 434, 436 (Ch.1890), aff'd 47 *N.J.Eq.* 601 (E. & A.1890).

"unnecessary judicial duplication," since the administrator's action to settle his account could be removed and consolidated with the escheat action. An examination of the appellate briefs filed in *Reich,* however, reveals that no escheat proceeding had been begun when a creditor of the deceased applied for letters of administration. Thus there was no judicial process already set in motion which could deal effectively with all the issues in dispute. *See, also, In re Aich Estate, supra.*

In the case at bar, however, the escheat proceeding was well underway prior to Mrs. Laufer's application to the surrogate.[5] And, as noted above, all interests can be protected and all forms of requested relief granted only under the umbrella of the Chancery Division action.[6] To allow the administration action to proceed in such a situation would afford no additional protection either to the Somoza estate or to any of the parties in interest. Rather such resort to local patronage would serve only to generate double expenses, thereby resulting in an unwarranted depletion of the estate.

The surrogate has no vested right to appoint an administrator to handle estates of intestate decedents who apparently have no next-of-kin; according to *N.J.S.A.* 3B:10–2, the surrogate "may" grant letters of administration in such cases. The effect of this decision is not to deprive the surrogate of power, but to direct

---

[5] *See Camden Trust Co. v. Toone,* 141 *N.J.Eq.* 342, 345 (Ch.1948), which noted that although equity "is always reluctant to interfere with an action at law," nonetheless "as between courts otherwise equally entitled to entertain jurisdiction, that court which first obtains possession of the controversy ought to be allowed to proceed and dispose of it without interference...," citing *Bigelow v. Old Dominion Copper Mining & Smelting Co.,* 74 *N.J.Eq.* 457, 474 (Ch.1908). But *cf. Rogozinski v. Rogozinski,* 109 *N.J.Super.* 138, 141–142 (Ch.Div.1970).

[6] *See Pascucci v. Vagott,* 71 *N.J.* 40, 51–54 (1976), where the Supreme Court stated that jurisdiction over an administrative matter should be asserted by the Appellate Division, notwithstanding concurrent jurisdiction over some issues in the Juvenile and Domestic Relations Court, since the case should proceed in the court that could grant complete relief. *See, also, Keegan v. Keegan Estate,* 157 *N.J.Super.* 279, 284 (Ch.Div.1978).

when the discretionary exercise of such power should be checked. In sum, when a valid escheat action is pending, which action alone can resolve all issues in dispute, the surrogate should not act. And if an administration action *is* subsequently begun, it should be consolidated into the escheat action and thereafter stayed or dismissed.